## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **HAILEY BOYD and GRACE MURTAGH,** | **Hon. George A. O'Toole, Jr.** |
| **Plaintiffs,** | **Case No. 1:25-cv-13618** |
| **v.** | |
| **THE BOSTON BEER COMPANY, INC.** | |
| **Defendant.** | |

## <u>RESPONSE IN OPPOSITION TO BOSTON BEER'S MOTION TO DISMISS</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

LEGAL STANDARD .......................................................................................................... 3

LEGAL ARGUMENT .......................................................................................................... 3

    I.     BOSTON BEER'S NONCOMPETITION AGREEMENTS VIOLATE THE MNAA...... 3

        A.   History of the MNAA Confirms Centrality of Garden Leave ...................................... 3

        B.   MNAA's Paradigm Shift Requires Consideration for Noncompetition Agreements...... 5

        C.   Boston Beer Pays Curtailed Garden Leave in Violation of the MNAA. ........................ 6

        D.   Boston Beer's Interpretation of the MNAA Creates Absurdity and Undermines the Purpose of the MNAA. ................................................................................................. 7

        E.   Boston Beer Cites Case Law that is Unavailing. ............................................................ 8

    II.    PLAINTIFFS HAVE STATED A VALID CHAPTER 93A CLAIM. .............................. 13

        A.   Defendant Violated Chapter 93A. ................................................................................. 13

        B.   Boston Beer's Unfair Conduct Involves Marketplace Transactions, Not Intracompany Disputes........................................................................................................................ 14

        C.   Defendant's Reliance on Its Previous Arguments Is Ineffective.................................. 16

    III.   PLAINTIFFS SUFFICIENTLY ALLEGED A CLAIM FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING. ................................................................... 17

    IV.   PLAINTIFFS HAVE STATED AN UNJUST ENRICHMENT CLAIM......................... 18

CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORTIES

<u>Cases</u>

*Anthony's Pier Four, Inc. v. HBC Assocs.*,
411 Mass. 451 (1991).................................................................................................. 20

*Banner Indus. v. Bilodeau*,
No. CIV.A. 3-236-C, 2003 WL 831974 (Mass. Super. Feb. 27, 2003)....................................... 4

*Commonwealth v. Escobar*,
479 Mass. 225, 93 N.E.3d 1156 (2018) ...................................................................... 13

*Commonwealth v. Garafalo*,
495 Mass. 746, 256 N.E.3d 621 (2025) ...................................................................... 13

*Cynosure LLC v. Reveal Lasers LLC*,
No. CV 22-11176-PBS, 2022 WL 18033055 (D. Mass. Nov. 9, 2022) ............................... 10, 11

*Debnam v. FedEx Home Delivery*,
766 F.3d 93 (1st Cir. 2014) ...................................................................... 18, 19

*DraftKings Inc. v. Hermalyn*,
118 F.4th 416 (1st Cir. 2024) ...................................................................... 4, 6

*Driscoll v. Simsbury Assocs., Inc.*,
2018 WL 2139223 (D. Mass. May 9, 2018) ...................................................................... 19

*Flemings v. Contributory Ret. Appeal Bd.*,
431 Mass. 374, 727 N.E.2d 1147 (2000) ...................................................................... 12

*Foley v. Wells Fargo Bank, N.A.*,
772 F.3d 63 (1st Cir. 2014) ...................................................................... 3

*Gomes v. Hyde*,
804 F. Supp. 3d 265 (D. Mass. 2025) ...................................................................... 9

*Governo Law Firm LLC v. Bergeron*,
166 N.E.3d 416 (Mass. 2021) ...................................................................... 17

*Green v. D2L Ltd.*,
516 F.Supp.3d 45 (D. Mass. 2021) ...................................................................... 21

*Kahn v. EarthLink Business, LLC*,
2018 WL 11219452 (D. Mass. Oct. 15, 2018)...................................................................... 22

*Lannan v. Levy & White*,
186 F.Supp.3d 77 (D. Mass. 2016) ...................................................................... 16

*Manning v. Zuckerman*,
   388 Mass. 8, 444 N.E.2d 1262 (1983) ............................................................... 17

*Marion Fam. Chiropractic, Inc. v. Seaside Fam. Chiropractic,*
   *LLC*, 2022 WL 1003963 (D. Mass. Apr. 4, 2022) ............................................... 17

*Mass. v. Schering-Plough Corp.*,
   779 F. Supp. 2d 224 (D. Mass. 2011) ................................................................. 8

*Miller v. Town of Wenham Mass.*,
   833 F.3d 46 (1st Cir. 2016) ................................................................................ 3

*Milliken & Co. v. Duro Textiles, LLC*,
   451 Mass. 547, 887 N.E.2d 244 (2008) ............................................................. 18

*Morrison v. Toys "R" Us, Inc.*,
   441 Mass. 451, 806 N.E.2d 388 (2004) ............................................................. 16

*NuVasive, Inc. v. Day*,
   No. 19-CV-10800, 2019 WL 2287709 (D. Mass. May 29, 2019) ....................... 10

*Outfront Media LLC v. Bd. of Assessors of Bos.*,
   493 Mass. 811, 231 N.E.3d 313 (2024) ............................................................. 13

*Portier v. NEO Tech. Sols.*,
   2019 WL 7946103 (D. Mass. Dec. 31, 2019) ..................................................... 19

*Slaney v. Westwood Auto, Inc.*,
   366 Mass. 688, 322 N.E.2d 768 (1975) ............................................................. 15

*Stevens v. Thacker*,
   550 F. Supp. 2d 161 (D. Mass. 2018) ................................................................ 21

*Stone Legal Resources Grp., Inc. v. Glebus*,
   No. CA025136, 2002 WL 35654421 (Mass. Super. Dec. 16, 2002) .................... 15

*Summit Inv. & Dev. Corp. v. Leroux*,
   69 F.3d 608 (1st Cir. 1995) ................................................................................ 9

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) ............................................................................................ 9

*U.S. v. Zannino*,
   895 F.2d 1 (1st Cir. 1990) .................................................................................. 20

*United States v. Menasche*,

348 U.S. 528 (1955) ................................................................................................ 8
*Watkins v. Omni Life Sci., Inc.*,
    692 F. Supp. 2d 170 (D. Mass. 2010) ................................................................ 23

*Woods v. Wells Fargo Bank, N.A.*,
    733 F.3d 349 (1st Cir. 2013) ................................................................................ 3

Statutes

G.L. c. 149 § 24L ............................................................................................... 1, 4
G.L. c. 149 § 24L(a) .......................................................................................... passim
G.L. c. 149 § 24L(b)(vii) ................................................................................... passim
G.L. c. 93A § 11 ..................................................................................................... 15

Other Authorities

Jerry Cohen et al., *Employee Noncompetition Laws and Practices: A Massachusetts Paradigm Shift Goes National*, 103 MASS. L. REV. 31 (2022) ....................................................... 5

Will Brownsberger, *A Study in Persistence and Compromise* (Aug. 13, 2018),
    https://willbrownsberger.com/a-study-in-persistence-and-compromise-legislation-regulating-agreements-not-to-compete/; H.B. 1794, 186th Gen. Ct. (Mass. 2009) ................................ 4, 5

Regulations

Non-Compete Clause Rule, 9 Fed. Reg. 38342 (May 7, 2024) ....................................................... 4

**INTRODUCTION**

This case presents a question of first impression under the Massachusetts Noncompetition Agreement Act ("MNAA"), G.L. c. 149 § 24L: whether an employer may satisfy the MNAA's consideration requirement by characterizing a dramatically reduced garden leave payment as "other mutually-agreed upon consideration." The MNAA requires that every noncompetition agreement, in order to be valid and enforceable, "be supported by a garden leave clause or other mutually-agreed upon consideration between the employer and the employee." G.L. c. 149, § 24L(b)(vii). A garden leave clause under the MNAA consists of payment of at least fifty percent of the employee's highest annualized base salary over the two years preceding termination, while "other mutually-agreed upon consideration" is not defined by the statute.

The Boston Beer Company, Inc.'s ("Boston Beer" or "Defendant") scheme tests the MNAA by electing to enforce its one-year noncompetition agreement (the "Noncompetition Agreement") but only paying former employees a flat $3,000 (less withholdings), an amount that is, at a minimum, several thousands of dollars less than the MNAA would otherwise require under a garden leave clause. Boston Beer thinks it can avoid scrutiny by labeling its shortchanged payment as "other mutually-agreed upon consideration," and that the company's label controls.

Boston Beer is wrong. Its interpretation would render the MNAA's garden leave provision meaningless and encourage every employer in Massachusetts to do exactly what Boston Beer has done: impose broad noncompetition agreements, enforce them aggressively, and avoid the MNAA's central financial protection by paying pennies on the dollar to former employees.

The plain text of the MNAA as well as its legislative history, intended purpose, and accepted canons of statutory construction all foreclose Boston Beer's erroneous interpretation of the MNAA. For the reasons set forth herein, Defendant's motion to dismiss should be denied.

**STATEMENT OF FACTS**

For over a decade, Boston Beer has required employees – regardless of position or job responsibilities – to sign its Noncompetition Agreement. DE 1, ¶ 1. The Noncompetition Agreement, which is drafted solely by Boston Beer and not subject to negotiation, prohibits former employees, for one year following the termination of their employment, from engaging in the "importing, production, marketing, sale or distribution of any beer, malt beverage, hard cider or product produced by the Company" with a wholesale price within twenty-five percent of any of Boston Beer's products, across all geographic areas in which the employee provided services or obtained proprietary information during the last two years of employment. *Id*., ¶¶ 40, 42. Given Boston Beer's vast and varied product offerings spanning multiple price points, this restriction functions as a near-complete ban from the alcoholic beverage industry. *Id*., ¶ 48.

The Noncompetition Agreement does not become effective until after the employment relationship ends and Boston Beer elects to enforce it. *Id*., ¶ 103. If Boston Beer decides to enforce the Noncompetition Agreement, it will pay former employees $3,000, applicable withholdings. *Id*., ¶¶ 102, 104. This payment is not calculated using the former employees' highest annualized salary but is instead a flat amount paid to all employees regardless of their salary. *Id*., ¶ 55. For both Plaintiffs, the $3,000 payment constitutes less than five percent of their annual salary at Boston Beer. *Id*., ¶ 77.

Plaintiff Hailey Boyd was hired as a Brewery Representative in or about July 2021 and was required to sign the Noncompetition Agreement. *Id*., ¶¶ 73-75. Her employment with Boston Beer ended in or around August 2025, at which point Boston Beer elected to enforce the Noncompetition Agreement and paid Plaintiff Boyd $3,000 less withholdings. *Id*., ¶¶ 76-77. Plaintiff Grace Murtagh was hired as a Brewery Representative in or around August 2019 and was likewise required to sign the Noncompetition Agreement. *Id*., ¶¶ 79-80. When Plaintiff Murtagh's

2

employment ended in April of 2023, Boston Beer elected to enforce the Noncompetition Agreement and paid Plaintiff Murtagh $3,000 less withholdings. *Id*., ¶¶ 82-83. Boston Beer provided no other consideration in exchange for the Noncompetition Agreement. *Id*., ¶¶ 78, 84.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face" even if proof is improbable. *Miller v. Town of Wenham Mass.*, 833 F.3d 46, 51 (1st Cir. 2016) (internal citations omitted); *Woods v. Wells Fargo Bank, N.A*., 733 F.3d 349, 353 (1st Cir. 2013) ("A court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations in the plaintiff's complaint set forth a "a plausible claim upon which relief may be granted."). "The court must take all of the pleaded factual allegations in the complaint as true." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71 (1st Cir. 2014) (internal citations omitted).

## LEGAL ARGUMENT

I.  **BOSTON BEER'S NONCOMPETITION AGREEMENTS VIOLATE THE MNAA.**

A.  **History of the MNAA Confirms Centrality of Garden Leave.**

The MNAA reflects a decade of legislative effort to address the well-documented harms that noncompetition agreements inflict on employees. While the MNAA was enacted on August 10, 2018,[1] its origins trace back ten years beforehand when a Massachusetts legislator sought to ban all noncompetition agreements in Massachusetts after learning of an individual whose career was sidelined by a noncompetition agreement that forced her to sit out of her field for two years.[2]

---

[1] G.L. c. 149, § 24L, inserted by 2018 Mass. Acts c. 228, §§ 21 and 71.
[2] *DraftKings Inc. v. Hermalyn*, 118 F.4th 416, 421 (1st Cir. 2024) (quoting Will Brownsberger, *A Study in Persistence and Compromise* (Aug. 13, 2018), https://willbrownsberger.com/a-study-in-

Noncompetition agreements can have devastating impacts on employees, such as forcing them to choose between a bevy of undesirable options when attempting to leave a job: accepting a lower-paid position in a different field, relocating to a different geographic location, being forced into expensive litigation with a better-resourced company, or suffering through harmful working conditions at their existing job. DE 1, ¶¶ 18-19. For years prior, Massachusetts courts recognized concerns over the harmful effects of noncompetition agreements. *See, e.g., Banner Indus. v. Bilodeau*, No. CIV.A. 3-236-C, 2003 WL 831974, at *4 (Mass. Super. Feb. 27, 2003) ("The average individual employee has little but his labor to sell or to use to make a living. He is often in urgent need of selling it and in no position to object to boilerplate restrictive covenants placed before him to sign. To him, the right to work and support his family is the most important right he possesses.") (citation omitted). Indeed, these same concerns have also lingered in the national landscape, as seen by the Federal Trade Commission's issuance of a final rule (though not currently in effect) banning the agreements nationwide.[3]

Over time, the outlines of the current MNAA moved away from an outright ban and toward strengthening the rights of employees subject to noncompetition agreements while still providing employers with the mechanisms to continue the use of noncompetition agreements. In the legislative session that gave rise to the MNAA, there were six bills that offered competing solutions to key issues, including: (1) the inclusion of a garden leave provision and what percentage of income would be required; (2) whether employers would be required to provide notice prior to enforcing the noncompete; and (3) whether courts could "blue pencil" invalid noncompetition

---

persistence-and-compromise-legislation-regulating-agreements-not-to-compete/;    H.B.    1794, 186th Gen. Ct. (Mass. 2009).

[3] Non-Compete Clause Rule, 9 Fed. Reg. 38342 (May 7, 2024) (to be codified at 16 C.F.R. 910).

agreements to render them valid.[4] Amendments were proposed, and rejected, to carve out franchise agreements, prohibit judicial reform of an invalid noncompetition agreement, and to increase the garden leave provision from 50% of an employee's base salary to 50% of total compensation.[5] The MNAA unanimously passed the General Court on August 1, 2018, and was signed into law on August 10, 2018.[6]

One of the key compromises in the MNAA was to allow noncompetition agreements but to require either a garden leave clause or "other mutually-agreed upon consideration." One legislator noted that the MNAA's garden leave provision was "[o]ne of the hardest fought issues over the past few years."[7] While the garden leave clause's inclusion was secured, commentators widely recognized that defining what constituted the statute's "other mutually-agreed upon consideration" would require judicial resolution.[8]

### B. MNAA's Paradigm Shift Requires Consideration for Noncompetition Agreements.

The MNAA ushered in "a *paradigm shift* in *favor* of *employees*" that provided employees "stronger substantive and procedural protections than in the past…" *DraftKings Inc. v. Hermalyn*, 118 F.4th 416, 421 (1st Cir. 2024) (quoting Jerry Cohen et al., *Employee Noncompetition Laws and Practices: A Massachusetts Paradigm Shift Goes National*, 103 MASS. L. REV. 31, 31 (2022)) (emphasis in *DraftKings*). The paradigm shift is evident in one particular "minimum requirement[]": that all noncompetition agreements "shall be supported by a garden leave clause

---

[4] Jerry Cohen et al., *Employee Noncompetition Laws and Practices: A Massachusetts Paradigm Shift Goes National*, 103 MASS. L. REV. 31, 54 (2022) at *53-54.

[5] *Id*.

[6] *Id.*

[7] Brownsberger, *supra* note 2.

[8] *Id.* ("Ultimately, the courts will be asked to interpret the noncompete statute's consideration requirements.").

or other mutually-agreed upon consideration between the employer and the employee…" G.L. c. 149 § 24L(b)(vii). A garden leave clause is "a provision…by which an employer agrees to pay the employee during the restricted period[9]…" G.L. c. 149 § 24L(a). In order to satisfy the MNAA, the employer's garden leave clause must provide for "payment…of at least 50 percent of the employee's highest annualized base salary paid by the employer within the 2 years preceding the employee's termination." G.L. c. 149 § 24L(b)(vii). The MNAA's garden leave clause is meant to ensure that employers do not bind employees to noncompetition agreements indiscriminately but instead adopt a thoughtful approach.

However, the MNAA inherently recognizes that employers and employees may desire flexibility to craft nonmonetary consideration for a noncompetition agreement. For example, a cash-strapped employer might desire to offer stock options, or an employee might prefer unique training to set her up for a career pivot in the event she separates from the company. Thus, the MNAA provides that the parties may agree to "other mutually-agreed upon consideration" in lieu of a monetary garden leave payment. G.L. c. 149 § 24L(b)(vii).

### C. Boston Beer Pays Curtailed Garden Leave in Violation of the MNAA.

Boston Beer violates the MNAA by electing to enforce its Noncompetition Agreements but dramatically shortchanging its ex-employees on their garden leave payments. When an employment relationship ends with Boston Beer, the company has the discretion to "determine whether or not it wishes to enforce or waive the non-competition provision" in the employment agreement. DE 1, ¶ 50. The only consideration Boston Beer provides former employees for the noncompetition agreement is a one-time payment of $3,000 (less tax withholdings) that is paid

---

[9] The "restricted period" is defined as "the period of time after the date of cessation of employment during which an employee is restricted by a noncompetition agreement from engaging in activities competitive with his or her employer." G.L. c. 149 § 24L(a).

6

"subject to BBC's election, at the time of termination, to enforce the non-competition covenant."
*Id.*, ¶ 52.

Paragraph 4(d) of the agreement contains all of the hallmarks of a "garden leave clause": (1) it is "a provision within a noncompetition agreement by which an employer agrees to pay the employee"; (2) "during the restricted period"; and (3) such provision "shall become effective upon termination of employment…" G.L. c. 149 § 24L(a). However, while the MNAA requires employers utilizing garden leave clauses to pay "at least 50 percent of the employee's highest annualized base salary paid by the employer within the 2 years preceding the employee's termination", G.L. c. 149 § 24L(b)(vii), Boston Beer chooses to issue a one-time $3,000 payment (less withholdings) irrespective of an employee's highest annualized salary. In fact, Boston Beer's $3,000 payment (less withholdings) is thousands of dollars less than an employee making the bare minimum wage under federal law. DE 1, ¶ 57. This means that, presuming Boston Beer complies with applicable minimum wage laws, all ex-employees for whom Boston Beer enforces its noncompetition agreement are shortchanged their statutorily-protected garden leave payments in violation of the MNAA.

### D. Boston Beer's Interpretation of the MNAA Creates Absurdity and Undermines the Purpose of the MNAA.

Boston Beer argues that the MNAA allows employers to offer either garden leave or *any* other consideration including less in garden leave, DE 14 at 8, but the company's application creates absurd results and ignores the MNAA's plain language. *See Mass. v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 232 (D. Mass. 2011) (*quoting United States v. Menasche*, 348 U.S. 528, 538–39, 1955)); *see also Gomes v. Hyde*, 804 F. Supp. 3d 265, 274 (D. Mass. 2025) (*quoting TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)) ("statutes should be construed so that 'no clause, sentence, or word shall be superfluous, void, or insignificant.'"). It is true that, read literally, the

MNAA provides an option to either pay garden leave or other consideration, but "[l]iteral interpretations which lead to absurd results are to be avoided." *Summit Inv. & Dev. Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir. 1995). Under Boston Beer's simplistic analysis, an employer could choose any monetary amount whatsoever - a single dollar - and it would constitute "other mutually-agreed upon consideration." But the MNAA's text does not encourage employers to conduct a "race to the bottom"; instead, it requires that any post-employment monetary payment be "at least 50 percent" of an employee's salary, and such percentage must be benchmarked to "the employee's highest annualized base salary…within the 2 years preceding the employee's termination." G.L. c. 149 § 24L(b)(vii).

Further, allowing employers to circumvent the MNAA's garden leave provision by paying less money and labeling it "other mutually agreed-upon consideration" is inconsistent with the MNAA's "paradigm shift in favor of employees" and the hard-fought legislative compromises that led to the provision's inclusion in the MNAA. *DraftKings*, 118 F.4th at 421. Adopting the MNAA's vocabulary is not the same as satisfying its requirements. Simply put - if other consideration can mean anything then garden leave means nothing.

### E.  Boston Beer Cites Case Law that is Unavailing.

Boston Beer relies on a handful of unpublished cases that consider the MNAA, but none touch directly on the issue before the Court. First, Boston Beer cites to *NuVasive, Inc. v. Day*, No. 19-CV-10800, 2019 WL 2287709, at \*4 (D. Mass. May 29, 2019), *aff'd*, 954 F.3d 439 (1st Cir. 2020), for the uncontroversial point that the MNAA allows employers to offer consideration besides garden leave.[10] Boston Beer's argument is a straw man; Plaintiffs explicitly recognized

---

[10] Boston Beer cites *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, No. 4:21-CV-10572-TSH, 2021 WL 2982866 (D. Mass. July 15, 2021) for the same purpose.

that the MNAA allows the parties flexibility to negotiate over cash-alternatives that better suit the parties' unique circumstances. DE 1, ¶ 30. What is impermissible under the MNAA is for an employer to shortchange a garden leave payment by dressing it up as "other mutually-agreed upon consideration." The Court should recognize Boston Beer's $3,000 payment for what it is: a deficient garden leave payment.

Next, Defendant cites an unpublished opinion, *Cynosure LLC v. Reveal Lasers LLC*, No. CV 22-11176-PBS, 2022 WL 18033055 (D. Mass. Nov. 9, 2022), in which the plaintiff sought a preliminary injunction to prevent departing employees and their subsequent employers from using confidential information as well as soliciting customers and employees. As relevant here, the case involved two agreements that implicated the MNAA -- a Lotus Parent, Inc. Employee Option Agreement ("Equity Agreement") and a Cynosure Employee Intellectual Property Rights, Confidentiality, and Protective Covenants Agreement ("CEIP") -- both of which contained noncompetition agreements. *Cynosure*, 2022 WL 18033055, at *5-7. The Equity Agreement's consideration included stock options[11], *id.* at *6, which Boston Beer argues are controlling here because they were offered in lieu of garden leave and found to satisfy the MNAA. Again, Boston Beer misses the point: Plaintiffs do not allege that noncompetition agreements must contain a garden leave clause but instead that Boston Beer's post-employment monetary payment was a deficient garden leave payment dressed up as "other mutually-agreed upon consideration." *Cynosure*'s CEIP agreement is likewise immaterial to the present case, as the consideration

---

[11] Stock options, which permit an employee to buy equity in the employer during her employment at a defined amount, have the potential of affording employees exponential returns and are thus of a different character than flat, post-employment monetary payments. The *Cynosure* Equity Agreement's noncompetition agreement remained in effect even if an employee chose to forfeit the options, a point Boston Beer seizes upon for reasons that are not clear. DE 14 at 7. While there may be good reasons why an employee would choose to forfeit their stock options, this mere fact is immaterial as it is a decision that would rest with each individual.

identified was the start of the employment whereas Boston Beer expressly identified the consideration for the non-competition agreement as $3,000, a fraction of what was owed in garden leave.

Nonetheless, Boston Beer appears to draw upon *Cynosure* to suggest that the mere start of employment can be considered "consideration" under G.L. c. 149 § 24L(b)(vii), but this argument runs into a host of insurmountable interpretive issues.[12] First, interpreting other consideration under G.L. 149 § 24L(b)(vii) to include the start of the employment itself would render the most consequential provision of the statute - the garden leave clause - as utterly meaningless.  *See Flemings v. Contributory Ret. Appeal Bd.*, 431 Mass. 374, 375–76, 727 N.E.2d 1147, 1148 (2000) ("In interpreting statutes, [n]one of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature.") (citation and quotation omitted).[13] The start of the employment will always precede a noncompetition agreement, meaning that under Boston Beer's interpretation there will always be "other mutually-agreed upon consideration." But if so, then the MNAA's requirement that all noncompetition agreements "shall be supported by a garden leave clause or other mutually-agreed upon consideration" really just means that all noncompetition agreements "shall be supported by the start of the employment." Such an interpretation renders the garden leave provision in the MNAA as superfluous.

---

[12] Boston Beer plainly states that consideration for Plaintiffs' Noncompete Agreements came in the form of its $3,000 lump sum payment, not the initiation of their employment periods. DE 14 at 8.

[13] The appropriate framework here is to consider Massachusetts law applying canons of statutory construction. *See Valley Forge Ins. Co. v. Field*, 670 F.3d 93, 99 (1st Cir. 2012).

10

One commentator, recognizing that Boston Beer's interpretation "renders the garden leave language unnecessary", suggests that the garden leave provision "provides an option from which the parties can negotiate…"[14] But statutes are not suggestions; the MNAA is not a blog post offering negotiation tips. The MNAA is a statute which lists mandatory obligations that noncompetition agreements must meet. No employer will voluntarily agree to garden leave when simply starting employment is good enough under the MNAA (at least, certainly not those with superior bargaining power like Boston Beer).

Second, other canons of statutory interpretation reject interpreting "other mutually-agreed upon consideration" as the start of the employment. Massachusetts applies the canon of *noscitur a sociis* which provides that "a word may be defined by an accompanying word, and that, ordinarily, the coupling of words denotes an intention that they should be understood in the same general sense." *Commonwealth v. Garafalo*, 495 Mass. 746, 755, 256 N.E.3d 621, 631 (2025) (quotation omitted); s*ee also Outfront Media LLC v. Bd. of Assessors of Bos.*, 493 Mass. 811, 818, 231 N.E.3d 313, 321 (2024) ("We also do not interpret words in a statute in isolation."). Similarly, the canon of statutory interpretation known as *ejusdem generis* "limits general terms which follow specific ones to matters similar to those specified." *Commonwealth v. Escobar*, 479 Mass. 225, 229, 93 N.E.3d 1156, 1160 (2018). It follows then that the meaning of "consideration" within the context of § 24L(b)(vii) can be gleaned from the words that surround it: "shall be supported by a garden leave clause or other mutually-agreed upon consideration". Because "consideration" is paired directly with "garden leave clause," it must be interpreted in the same general vein. A garden leave clause requires post-employment monetary payments, G.L. c. 149 § 24L(a), and is meant to

---

[14] Russell Beck and Erika Hahn, *The new non-compete law: compromise happens* (Oct. 17, 2019), https://masslawyersweekly.com/2019/10/17/the-new-noncompete-law-compromise-happens/.

compensate and prepare a former employee for suffering a career setback associated with being prevented from working in the same industry and/or geographic location. Accordingly, "consideration" must mean something of a related nature. Otherwise, "the more general term would always strip the more specific term[] of any meaning whatsoever." *Escobar*, 479 Mass., at 229. Allowing "consideration" to mean "start of employment" would sever consideration from its statutory context within the MNAA and render the garden leave requirement meaningless.

Third, interpreting "consideration" to mean the "start of employment" would vitiate the purpose of the MNAA. "A statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the main cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Outfront Media LLC*, 493 Mass., at 818, 231 N.E.3d at 321 (citation and quotation omitted). The garden leave clause of the MNAA was not just a legislative afterthought but a central compromise that became a defining feature of the statute. The MNAA brought a "paradigm shift in favor of employees" that offered "stronger substantive and procedural protections than in the past." *DraftKings*, 118 F.4th at 422. One such protection is the requirement for separate consideration for employees who employers seek to bind to noncompetition agreements. Allowing the start of employment to be sufficient consideration for a noncompetition agreement puts employees in no better position than prior to the MNAA.

Boston Beer's interpretation of the MNAA rests on a comparison of a pre-MNAA case, *Stone Legal Resources Grp., Inc. v. Glebus*, No. CA025136, 2002 WL 35654421, at *5 (Mass. Super. Dec. 16, 2002) with G.L. c. 124 § 24L(b)(ii), which says that a noncompetition agreement "entered into after commencement of employment but not in connection with the separation from employment [] must be supported by fair and reasonable consideration independent from the

12

continuation of employment." In short, Boston Beer appears to suggest that because the MNAA specifically addresses noncompetition agreements entered into during the employment (and not before), and because the existing law allowed the start of employment to constitute consideration, the MNAA's silence on the subject should be interpreted as a continuation of existing law. However, such an inverse inference is not warranted here, when the purpose behind the MNAA is to change existing practice.

## II.    PLAINTIFFS HAVE STATED A VALID CHAPTER 93A CLAIM.

### A.  Defendant Violated Chapter 93A.

Chapter 93A establishes liability when "[a]ny person who engages in the conduct of any trade or commerce … suffers any loss of money or property, real or personal, as a result of the use of trade or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice." G.L. c. 93A § 11. Chapter 93A "is a statute of broad impact." *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 693, 322 N.E.2d 768 (1975). "[A] practice or act [is] unfair under G.L. c. 93A, § 2, if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people" *Morrison v. Toys "R" Us, Inc.*, 441 Mass. 451, 457, 806 N.E.2d 388 (2004) (citation and quotation omitted). Statutory violations *per se* fall within the "penumbra" of unfairness. *Lannan v. Levy & White*, 186 F.Supp.3d 77, 97 (D. Mass. 2016).

Boston Beer violated Chapter 93A when it leveraged its superior power to prevent former employees from working in the alcoholic beverage industry all the while skirting the mandatory requirements of the MNAA by paying former employees significantly less than required by its garden leave clause. DE 1, ¶¶ 40, 54, 56-57. Defendant has the exclusive right to enforce its

13

Noncompetition Agreement against employees regardless of the nature of their position and has for over a decade weaponized it to chill employees from leaving the company and to prevent future employers from hiring. *Id*., ¶¶ 1, 62, 69. Boston Beer's actions are aimed at maintaining its competitive position within the alcoholic beverage industry to the detriment of would-be competitors and the people (former employees) who would work for them, and thus are engaged in trade or commerce.

### B. Boston Beer's Unfair Conduct Involves Marketplace Transactions, Not Intracompany Disputes.

Defendant argues that Chapter 93A does not apply in the employment context. DE 14 at 9. This is a misstatement of Massachusetts law. "[T]he inapplicability of G. L. c. 93A, § 11, to disputes arising from an employment relationship does not mean that an employee never can be liable to its employer under G. L. c. 93A, § 11" or that a former employer can never be liable to an ex-employee under the statute. *Marion Fam. Chiropractic, Inc. v. Seaside Fam. Chiropractic, LLC*, 2022 WL 1003963, at *11 (D. Mass. Apr. 4, 2022) (quoting *Governo Law Firm LLC v. Bergeron*, 166 N.E.3d 416, 425 (Mass. 2021)). While "the ordinary cooperative circumstances of the employment relationship between an employee and the organization of which he [or she] is a member" are not "marketplace transactions" within the meaning of Chapter 93A, there can be actions taken within the employment relationship that nonetheless constitute marketplace transactions. *Governo Law Firm*, 166 N.E.3d at 425 (quoting *Manning v. Zuckerman*, 388 Mass. 8, 13, 444 N.E.2d 1262 (1983)). Thus, the focus is not whether an employment relationship ever existed but instead on whether the conduct is "purely an internal matter" such that it constitutes an "intracompany dispute[]." *Id*.

Here, the dispute between Plaintiffs and Boston Beer could not have arisen, and would never arise, within the company because for as long as Plaintiffs were employed by Boston Beer,

14

the Noncompetition Agreement could not take effect. *See* DE 1, ¶¶ 49-50. In other words, the dispute over the Noncompetition Agreement does not ripen until after the employment relationship ends. At this time, the dispute is not an "purely an internal matter" because the parties are not within the same organization. When the dispute arises -- when Boston Beer elects to enforce the noncompetition agreement and violates the MNAA -- the parties take on entirely different roles of a former employer and a potential competitor. Thus, Boston Beer cannot rely on the intracompany exception to Chapter 93A to dismiss Plaintiffs' claims.

Boston Beer otherwise argues that their actions do not involve trade or commerce, DE 14 at 9, but the company's position is undermined by its own actions. Not only is the dispute unripe until after the employment relationship ends, the dispute is invoked at the election of Boston Beer only when the company decides that the threat of competition in the marketplace requires enforcing the Noncompetition Agreement. DE 1, ¶¶ 49-51. This means that, at the moment the company invokes the Noncompetition Agreement but fails to make a complete garden leave payment, Boston Beer was engaged in "a commercial transaction between a person engaged in a trade or commerce and another person engaged in trade or commerce…" *Governo Law Firm*, 487 Mass. at 194, 166 N.E.3d at 424 (quoting *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563, 887 N.E.2d 244 (2008)). Boston Beer's Noncompetition Agreements indisputably involve marketplace transactions because the entire point of the agreements is to protect Boston Beer's business interests against competitors.

These qualities make the Noncompetition Agreement distinguishable from Defendant's cited cases. In *Debnam v. FedEx Home Delivery,* 766 F.3d 93, 94 (1st Cir. 2014), the plaintiff brought a Chapter 93A claim and other Massachusetts state law claims based on wage payment issues. The First Circuit held that the wage dispute between the employee and employer did not impact trade or commerce under Chapter 93A because the plaintiff's business was devoted entirely

15

to providing services as an employee or contractor to the defendant, and not to the greater public. *Id.*, at 97-98. Here, in contrast, the nature of the Noncompetition Agreement, which prevents a former employee from seeking employment at any employer deemed to be a competitor, ensures that it has an impact on the greater beverage industry. *See* DE 1, ¶¶ 20-22.

Defendant's other cases are also unavailing. In *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at \*1 (D. Mass. Dec. 31, 2019), the plaintiffs were employees that sued their employer for failing to encrypt their social security numbers and thereby delaying the notice of a data breach. However, the defendant obtained the social security numbers in order to comply with federal and state laws governing employer-employee relationships, and thus (unlike the present case) the alleged violation did not arise out of trade or commerce. *Id.*, at \*28. Similarly, in *Driscoll v. Simsbury Assocs., Inc.*, 2018 WL 2139223, at \*7 (D. Mass. May 9, 2018), the court held that court found that the plaintiff's 93A claim was "based exclusively upon Plaintiff's employment relationship to Defendant, and therefore she is not entitled to invoke the protections of Chapter 93A." To the contrary, Plaintiffs' and Defendant's Noncompetition Agreements and the payments at issue occurred outside of Plaintiffs' employment and are directed toward post-employment market transactions. None of Defendant's cases addresses whether a noncompetition agreement occurring entirely outside of a plaintiff's employment with clear effects on the greater economy are covered by 93A. As such, the Court should find that Plaintiffs have stated a valid 93A claim.

### C.  Defendant's Reliance on Its Previous Arguments Is Ineffective.

Defendant seeks to incorporate by reference arguments it made in another case, *Brennan v. The Boston Beer Co., Inc.*, 1:24-cv-10029-GAO. DE 14 at 9.[15] However, Boston Beer was

---

[15] Boston Beer makes the same argument as to the Breach of Implied Covenant of Good Faith and Fair Dealing, and Unjust Enrichment claims.

obligated to bring forth arguments as to the complaint that Plaintiffs' brought, not point to arguments it made as to others. *See U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not merely enough to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones … a litigant has an obligation to spell out its arguments squarely and distinctly") (internal citations and quotations omitted). As such, Boston Beer has forfeited any arguments not actually raised in its brief.

### III.    PLAINTIFFS SUFFICIENTLY ALLEGED A CLAIM FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING.

Boston Beer next argues it did not injure or impair Plaintiffs' "rights to receive the fruits of the contract or their realization of the objectives of the contract." DE 14 at 11. But Boston Beer misunderstands Plaintiffs' position. The implied covenant of good faith and fair dealing requires "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-472 (1991).

Plaintiffs do, contrary to Boston Beer's assertion, plead that Defendant injured their right to realization of their benefits of the contract because Boston Beer fails to pay an adequate amount to Plaintiffs in exchange for their agreement not to compete. *See* DE 1, ¶¶ 57-58. Boston Beer fails to adequately compensate its employees according to the MNAA's garden leave clause because it pays employees only $3,000 regardless of the specific role occupied by the employee. *Id.*, ¶¶ 56-58. Boston Beer pays the $3,000 in an effort to evade the MNAA and avoid paying the requisite 50% of the employee's annualized base salary as required. *Id.*, ¶ 58. Plaintiffs were thus subject to the enforcement of these Noncompetition Agreements while receiving inadequate compensation. As such, Plaintiffs have sufficiently alleged a claim for Breach of Covenant of Good Faith and Fair Dealing. *See Green v. D2L Ltd.*, 516 F.Supp.3d 45, 49 (D. Mass. 2021) (finding the plaintiff

17

sufficiently alleged a claim for breach of the implied covenant of good faith and fair dealing where the defendant failed to pay amounts owed, leading to a windfall for defendant).

## IV.    PLAINTIFFS HAVE STATED AN UNJUST ENRICHMENT CLAIM.

Boston Beer finally argues that the Plaintiffs' Unjust Enrichment claim should fail because it paid adequate consideration for its noncompete agreements. DE 14 at 11. To prevail on a claim for unjust enrichment, a plaintiff must demonstrate: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Stevens v. Thacker*, 550 F. Supp. 2d 161, 165 (D. Mass. 2018).

Boston Beer relies on the fact that it paid Plaintiffs some consideration in the form of $3,000 in exchange for signing the Noncompetition Agreement. However, Defendant was unjustly enriched by virtue of the fact that it paid far less to Plaintiffs than required by the MNAA, and in return received the effect of its Noncompetition Agreements. DE 1, ¶ 57. Were Boston Beer to have provided garden leave to Plaintiffs, they would have been given far more than $3,000. *Id*.

Defendant's reliance on *Kahn v. EarthLink Business, LLC*, 2018 WL 11219452 (D. Mass. Oct. 15, 2018) is misplaced. In *Kahn*, the court granted summary judgment because the defendant had continued to provide services at a cost to itself — meaning the defendant actually conferred a tangible, ongoing benefit on the plaintiff, for which it received no payment. *Id.* The unjust enrichment claim failed because there was no inequitable retention of a benefit; the defendant was, if anything, the party incurring a loss. *Id*. Here, Boston Beer received and retained concrete, quantifiable benefits from its Noncompetition Agreement — including suppression of labor market competition, restriction of employee mobility, protection of its competitive position in the alcoholic beverage industry, and chilling of employee departures — while deliberately paying

18

Plaintiffs and Class Members $3,000 (less withholdings), far less than what the MNAA requires as garden leave. DE 1, ¶ 58. Unlike the defendant in *Kahn*, Boston Beer was not providing ongoing services at a cost to itself; it was extracting a year-long, broad competitive restriction from its former employees while paying consideration so inadequate that even the lowest-paid minimum wage employee would have been owed more than double that amount under the MNAA. *Id.*, ¶ 60. The benefit Boston Beer retained — enforcement of the Noncompetition Agreement across a nationwide workforce of hundreds, if not thousands, of employees — is precisely the type of inequitable and unconscionable windfall that unjust enrichment is designed to remedy. *See Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 179 (D. Mass. 2010) ("Under the doctrine of unjust enrichment, a plaintiff seeks restitution of a benefit conferred on another whose retention of the benefit at plaintiff's expense would be unconscionable.").

## CONCLUSION

The MNAA was a piece of legislation a decade in the making, with garden leave being one of the most contested provisions within the statute. The General Court did not expend its time and resources negotiating and passing a paradigm-shifting piece of legislation only for it to be rendered meaningless, and this Court should not countenance the actions of Boston Beer that frustrate the MNAA's purpose.

Plaintiffs respectfully request that Defendant's Motion to Dismiss be denied.

DATED: March 20, 2026

Respectfully Submitted,

Ashley M. Pileika
Massachusetts State Bar No. 709954
Darren R. Wolf
Texas State Bar No. 24072430
**Law Office of Darren Wolf, P.C.**
1701 N. Market Street, Suite 210

19

Dallas, Texas 75202
P:  214-346-5355 | F: 214-346-5909
ashley@darrenwolf.com
darren@darrenwolf.com

Joel Wertheimer
New York State Bar No. 4922449
**Wertheimer LLC**
14 Wall Street, Suite 1603
New York, New York 10005
P: 646-720-1098
joel@ joelwertheimer.com

Patrick M. Wallace
North Carolina State Bar No. 48138
Jeremy R. Williams
North Carolina State Bar No. 48162
Kathryn Anne B. Robinson
North Carolina State Bar No. 61092
**Lee Segui PLLC**
900 W. Morgan Street
Raleigh, NC 27603
P: 919-421-7781
pwallace@leesegui.com
jwilliams@leesegui.com
krobinson@leesegui.com

### Certificate of Service

I, Ashley M. Pileika, hereby certify that on March 20, 2026, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by first class mail to all non-registered participants.

Ashley M. Pileika

20