## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **HAILEY BOYD, et al.,** | **Hon. George A. O'Toole, Jr.** |
| **Plaintiffs,** | **Case No. 1:25-cv-13618-GAO** |
| **v.** | **Leave to File Granted on April 8, 2026** |
| **THE BOSTON BEER COMPANY, INC.** | |
| **Defendant.** | |

### DEFENDANT THE BOSTON BEER COMPANY, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

4912-5806-8124.8

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 2

    A.    Boston Beer Provided Sufficient Consideration to Plaintiffs under the MNAA .... 2

        1.    Plaintiffs Have Conceded That the Categories of Consideration They Received are Valid Forms of Consideration ................................................. 2

        2.    A Lump Sum Payment of $3,000 is Not "Deficient Garden Leave" ........... 5

    B.    Plaintiffs Fail to State a Valid 93A Claim Because this Dispute Stems from the Parties' Employment Relationship ............................................................................. 6

    C.    Plaintiffs Stated Neither a Breach of Covenant of Good Faith and Fair Dealing Claim nor Unjust Enrichment, Because They Are Conflating These Common Law Claims with Their Allegation that Boston Beer Violated the MNAA .................... 7

III.  CONCLUSION ....................................................................................................... 9

4912-5806-8124.8

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Cynosure LLC v. Reveal Lasers LLC,
C.A. No. 22-cv-11176-PBS, 2022 U.S. Dist. LEXIS 234160 (D. Mass. Nov. 9, 2022) ...............................................................................................................3, 4

DraftKings Inc. v. Hermalyn,
118 F.4th 416 (1st Cir. 2024).................................................................................5

Fabriclear, LLC v. Harvest Direct, LLC,
481 F. Supp. 3d 27 (D. Mass. 2020).....................................................................8

Green v. D2L Ltd.,
516 F. Supp. 3d 43 (D. Mass. 2021).....................................................................8

Marion Fam. Chiropractic, Inc. v. Seaside Fam. Chiropractic, LLC,
2022 U.S. Dist. LEXIS 62155 (D. Mass. Apr. 4, 2022) .............................................7

NuVasive, Inc. v. Day,
C.A. No. 19-cv-10995, 2019 U.S. Dist. LEXIS 90388 (D. Mass. May 29, 2019) .....................................................................................................................3

O'Hara v. Diageo-Guinness, USA, Inc.,
306 F. Supp. 3d 441 (D. Mass. 2018)...................................................................9

Pearson v. Bank of N.Y. Mellon,
2014 U.S. Dist. LEXIS 106457 (D. Mass. Aug. 4, 2014).........................................8

**State Cases**

Automile Holdings, LLC v. McGovern,
483 Mass. 797 (2020) ...........................................................................................5

Governo Law Firm LLC v. Bergeron,
487 Mass. 188 (2021) ........................................................................................6, 7

Informix, Inc. v. Rennell,
41 Mass. App. Ct. 161 (1996)............................................................................6, 7

Manning v. Zuckerman,
388 Mass. 8 (1983) ...............................................................................................6

Wells v. Wells,
9 Mass. App. Ct. 321 (1980)................................................................................5

4912-5806-8124.8

-iii-

**State Statutes**

MNAA ................................................................................................................................ *passim*

**Other Authorities**

Bob Salsberg, *"Garden" clause in new law requires pay during noncompete,*
AP News (Sept. 30, 2018), https://apnews.com/general-news-
34d7fc49684a4c80a16c7a20c1022533 ........................................................................... 6

Callum Borchers, *Mass. Business Grapple With Uncertainty As Partial Ban On
Noncompetes takes Effect*, WBUR News (Oct. 1, 2018),
https://www.wbur.org/news/2018/10/01/mass-businesses-grapple-with-
uncertainty-as-partial-ban-on-noncompetes-takes-effect ............................................... 6

4912-5806-8124.8

Defendant The Boston Beer Company, Inc. ("Boston Beer" or "Defendant") hereby submits this reply memorandum in support of its Motion to Dismiss Plaintiffs' Complaint ("Defendant's Motion").

## I.    INTRODUCTION

Plaintiffs' opposition either ignores, or misconstrues, the plain text of the Massachusetts Noncompetition Agreement Act ("MNAA"), the actual language of the Employment Agreements at issue, and this Court's jurisprudence in their attempt to salvage their claims.  However, based on the **actual** facts alleged in their Complaint and/or contained in the documents incorporated into the Complaint, Plaintiffs have actually conceded that the consideration provided to them was sufficient under the statute.

Specifically, Plaintiffs would have this Court believe that the only consideration offered to them (and all Boston Beer employees) is $3,000.  This is not true.[1]  Plaintiffs' respective Employment Agreements expressly provide for more than $3,000 in consideration for, amongst other provisions, the non-competition provision:

> In **consideration of the employment of the Employee by the Company, the Employee's eligibility to participate in the Company's Employee Equity Incentive Plan as set forth herein, the training provided to Employe, and for other good and valuable consideration**, the receipt and sufficiency of which are hereby acknowledged, the Employee hereby agrees with the Company as follows[.]

Employment Agreement, p. 1.  (Emphasis added.)  Plaintiffs' respective offer letters, attached to Defendant's Motion to Dismiss as Exhibits A and B, stated the **additional** consideration they would receive for agreeing to comply with the non-competition provision:

> **Employment Agreement:**  As a condition of your employment in this position, you are required to sign and return to Boston Beer the attached Employment Agreement prior to your start date… **As additional consideration** for your agreeing to and complying with the non-competition provision set forth in Section 4(a) of the

---

[1]    Even if it were, for the reasons set forth in its initial papers, the payment alone is sufficient consideration under the MNAA under the "other mutually-agreed upon consideration" prong of the statute.

Employment Agreement, Boston Beer agrees to pay you $3,000 (minus all required tax withholdings) at the time your employment terminates[.]

(Emphasis added.) The Employment Agreement likewise reiterated that this monetary payment was **additional** consideration that Plaintiffs would receive post-employment if Boston Beer decided to enforce the non-competition provision after their employment ended:

If the Company elects to enforce [the non-competition] provision… the Company shall pay Employee, **as additional consideration** for his/her compliance with Section 4(a), the amount set forth **as such additional consideration** in the Offer Letter provided to and signed by Employee[.]

Employment Agreement, §4(d) (emphases added).

Therefore, contrary to Plaintiffs' assertions, Boston Beer has not merely provided $3,000 in consideration. Rather, Plaintiffs received (1) employment, (2) eligibility to participate in an equity incentive plan, (3) training **and** (4) a lumpsum of $3,000 (minus all required tax withholdings). Based on these facts, clearly set forth in the Complaint and incorporated documents, even under Plaintiffs' reading of the statute, they have received sufficient consideration in exchange for the non-competition agreement.

## II.    ARGUMENT

### A.    Boston Beer Provided Sufficient Consideration to Plaintiffs under the MNAA

#### 1.    Plaintiffs Have Conceded That the Categories of Consideration They Received are Valid Forms of Consideration

In their Complaint, Plaintiffs state that the "other mutually-agreed upon consideration" language of the MNAA is meant to ensure that employees receive "other valuable consideration (**such as stock options**)." Cmplt., ¶3 (emphasis added). Plaintiffs also acknowledge that "parties may decide to provide **stock options**, more generous vacation terms, **earlier vesting of stock units, additional specialized training** and support (separate from that already provided by the employer), or access to a company-provided car or living quarters." Cmplt., ¶30 (emphases

-2-

added).  Further, in Footnote 11 of their Opposition, Plaintiffs acknowledge that "Stock options…

have the potential of affording employees exponential returns and are thus of a different character

than flat, post-employment monetary payments."

Although Boston Beer disagrees that the $3,000 payment alone is insufficient, based on

Plaintiffs' own arguments,  the other consideration provided by Boston Beer are likewise sufficient

forms of consideration under the MNAA.

Indeed, Boston Beer's consideration goes well beyond consideration that this Court has

already held is valid.  In NuVasive, Inc. v. Day, C.A. No. 19-cv-10995, 2019 U.S. Dist. LEXIS

90388, at *13 (D. Mass. May 29, 2019), this Court held the following clause met the MNAA's

requirements:

> In consideration of my engagement by the Company, the compensation I (the
> **"Shareholder"**) receive from the Company (including for example monetary
> compensation, Company goodwill, confidential information, restricted stock units
> **and/or** specialized training), and the Proprietary Information that will be entrusted
> to me in my capacity as an employee or agent of the Company, and where permitted
> by the state in which I perform the services subject to this Agreement, my continued
> engagement with the Company, I agree to certain restrictions placed by the
> Company on my use of information belonging to the Company.

Id. at Dkt No. 1-1, p. 2 (emphasis added).  As Boston Beer noted in its moving papers, this was

valid consideration, despite the clause including "and/or" language.  Rather than using disjunctive

language in its Employment Agreement, Boston Beer promises employment, eligibility to

participate in its Employee Equity Incentive Plan, training, **and** $3,000 upon termination of

employment.  Surely, if the consideration set forth in NuVasive was valid, so too is Boston Beer's.

Furthermore, as Boston Beer has already noted, the uncertain nature of the stock options

provided in the Employee Option Agreement ("Equity Agreement") in Cynosure LLC v. Reveal

Lasers LLC, C.A. No. 22-cv-11176-PBS, 2022 U.S. Dist. LEXIS 234160, at *29 (D. Mass. Nov.

-3-

9, 2022) did not stop this Court from holding that it was sufficient consideration under the MNAA. Specifically, that provision stated:

> Section 2(b): <u>Restrictive Covenants</u>.  In consideration of the receipt of the Options set forth in Section 1, the Employee agrees to be bound by the covenants in Exhibit A to this Agreement; **it being understood that the Employee shall be required to comply with such covenants even if the Employee has vested in, exercised, or forfeited all of the Options**, or sold the Shares underlying the Options.

<u>Id.</u> at *20-21 (emphasis added).  Plaintiffs' eligibility to participate in Boston Beer's Employee Equity Incentive Plan likewise satisfies the MNAA's requirements.[2]

The second agreement considered in that case was the Cynosure Employee Intellectual Property Rights, Confidentiality and Protective Covenants Agreements ("CEIP").  Plaintiffs argue that the CEIP is "immaterial to the present case, as the consideration identified was the start of employment whereas Boston Beer expressly identified consideration for the non-competition agreement as $3,000[.]" Opposition, pp. 9-10.  Again, Plaintiffs have wholly ignored that the Boston Beer Employment Agreement also expressly includes "the employment" of Plaintiffs by Boston Beer as consideration. Employment Agreement at 1. Judge Saris unequivocally held that because the agreement at issue in <u>Cynosure</u> was signed at the start of employment – as compared to during employment – that was sufficient consideration under the MNAA.  <u>Cynosure LLC</u>, C.A. No. 22-cv-11176-PBS, 2022 U.S. Dist. LEXIS 234160 at *30.  Clearly, if the start of employment

---

[2]    In Footnote 11 of their Opposition, Plaintiffs acknowledge that the <u>Cynosure</u> noncompetition provision remained in effect even if stock options were forfeited. However, they then misstate the terms of the agreement, asserting that the "noncompetition agreement remained in effect even if **an employee** chose to forfeit the options[.]" (Emphasis added.)  Plaintiffs then go on to incorrectly claim that such forfeiture "is a decision that would rest with each individual" and is therefore immaterial.  Contrary to this assertion, it is quite material because forfeiture – generally, but specifically in the Equity Agreement – does not always rest with the individual.  The Equity Agreement specifically provided  that "[i]f the Employee's employment with the Company terminates **for any reason**, any Options held by the Employee that have not vested before the effective date of such termination of employment or that do not become vested on such date… shall terminate immediately upon such termination of employment[.]" (Emphasis added.)  The Equity Agreement then goes on to state that if employment is terminated "for Cause, **all** Options (whether or not then vested or exercisable) shall automatically terminate immediately upon such termination." (Emphasis added.)  See <u>Cynosure LLC</u>, C.A. No. 22-cv-11176-PBS, 2022 U.S. Dist. LEXIS 234160 at Dkt. 7-3, p. 32.  In other words, employees could be stripped of all of their Options but still be held to the restrictive covenants.

**alone** is sufficient consideration, then the start of employment plus additional categories of consideration, including eligibility to purchase stock and a lumpsum payment, is valid consideration under the MNAA.[3]

### 2.    A Lump Sum Payment of $3,000 is Not "Deficient Garden Leave"

Plaintiffs next accuse Boston Beer of improperly labeling the $3,000 payment as "other mutually-agreed upon consideration," but it is actually Plaintiffs who have improperly labeled this lumpsum payment as "curtailed" or "deficient" garden leave. Plaintiffs go as far as to say that the $3,000 payment "contains all of the hallmarks of a 'garden leave clause' " (Opposition, pp. 6-7), despite the only similarity between the lumpsum payment and garden leave is that they are both forms of cash consideration. Clearly a lumpsum payment is **not** a payment "consistent with the requirements for the payment of wages under section 148 of chapter 149 of the general laws, [paid] on a pro-rata basis during the entirety of the restricted period[.]" M.G.L. c. 149 § 24L(b)(vii). Rather than accept that this is a different form of consideration (which would weaken their argument that it is not valid consideration), Plaintiffs argue that Boston Beer opted to shortchange their employees with insufficient "garden leave." This is not the case. In fact, in addition to the

---

[3]    Plaintiffs' attempt to undo Judge Saris' decision is futile. They oddly state that "[t]he start of the employment **will always** precede a noncompetition agreement, meaning that under Boston Beer's interpretation there will always be 'other mutually-agreed upon consideration.' " Opposition, p. 10 (emphasis added.) This is a clear misstatement – not all noncompetition agreements precede employment and the MNNA specifically addresses instances when agreements are entered into during employment. See M.G.L. c. 149 §24L(b)(ii) ("If the agreement is entered into after commencement of employment but not in connection with the separation from employment…"). Plaintiffs also wrongly assert that "[a]llowing the start of employment to be sufficient consideration for a noncompetition agreement puts employees in no better position than prior the MNAA." Opposition, p. 12. This is also not true. As this Court has noted, the MNAA put into place "stronger substantive **and** procedural protections[]." DraftKings Inc. v. Hermalyn, 118 F.4th 416, 421 (1st Cir. 2024). Specifically, employees must be provided with 10 days' notice and be instructed that they have the right to speak to counsel. These requirements are significant and create a very different paradigm than what was in place pre-MNAA even when the only consideration offered is the start of employment. See Automile Holdings, LLC v. McGovern, 483 Mass. 797, 809, 136 N.E.3d 1207, 1218 (2020) (citing Wells v. Wells, 9 Mass. App. Ct. 321, 323-328, 400 N.E.2d 1317 (1980)) (noting that postemployment restrictive covenants were often the product of unequal bargaining power because "[e]mployees are 'likely to give scant attention to the hardship [they] may later suffer through loss of [their] livelihood.' They often also agree to such restraints without the assistance of counsel.")

-5-

consideration outlined above, Boston Beer made an additional lumpsum payment – not garden leave – to Plaintiffs.[4]

### B. Plaintiffs Fail to State a Valid 93A Claim Because this Dispute Stems from the Parties' Employment Relationship

Contrary to Plaintiffs' assertion, Boston Beer has not stated that M.G.L. c. 93A, §11 ("93A") "does not apply in the employment context."  Rather, Boston Beer has stated – based on longstanding Massachusetts law – that employment **agreements** between an employee and his employer do not constitute trade or commerce under 93A.  See e.g., Manning v. Zuckerman, 388 Mass. 8, 13, 444 N.E.2d 1262 (1983); Informix, Inc. v. Rennell, 41 Mass. App. Ct. 161, 162-63, 668 N.E.2d 1351 (1996).  Boston Beer acknowledges that the Massachusetts Supreme Judicial Court has noted an exception to the general rule that disputes arising from an employment relationship do not give rise to a c. 93A claim, but this holding is inapplicable here.  See e.g., Governo Law Firm LLC v. Bergeron, 487 Mass. 188, 195-96, 166 N.E.3d 416, 425 (2021) (holding that "[w]here an employee misappropriates his or her employer's proprietary materials during the course of employment **and then** uses the purloined materials in the marketplace, that conduct is not purely an internal matter; rather, it comprises a marketplace transaction that may give rise to a claim under G. L. c. 93A, § 11.") (Emphasis added.)  Notably, the decision that Plaintiffs rely on states that an **employee** might be liable to an employer under 93A – not the other way around.

---

[4]    Plaintiffs spend a significant portion of their Opposition discussing Massachusetts' history with respect to enacting legislation regarding non-competition agreements.  But Plaintiffs fail to acknowledge that such proposed legislation was unsuccessful when garden leave was required.  See e.g., Callum Borchers, *Mass. Business Grapple With Uncertainty As Partial Ban On Noncompetes takes Effect*, WBUR News (Oct. 1, 2018), https://www.wbur.org/news/2018/10/01/mass-businesses-grapple-with-uncertainty-as-partial-ban-on-noncompetes-takes-effect ("Garden leave was among the most contentious points of debate during a years-long legislative process that failed to produce a signed bill in previous sessions… The bill signed by [Governor Charlie] Baker represented a compromise."); Bob Salsberg, *"Garden" clause in new law requires pay during noncompete*, AP News (Sept. 30, 2018), https://apnews.com/general-news-34d7fc49684a4c80a16c7a20c1022533 ("Compromise language added by lawmakers before passage in the final hours of the 2018 legislative sessions allows for 'mutually-agreed upon consideration' to be substituted for garden leave… The compromise apparently broke a stalemate that had stalled noncompete legislation in previous years.")

4912-5806-8124.8

See Marion Fam. Chiropractic, Inc. v. Seaside Fam. Chiropractic, LLC, 2022 U.S. Dist. LEXIS 62155, at *28 (D. Mass. Apr. 4, 2022) (applying Governo where it was alleged that a former employee took confidential information for her use after she left the plaintiff's business to begin practicing at her new venture).

Once again, Plaintiffs get the facts of this case wrong.  They state that a dispute between these parties could never have arisen "within the company" because the noncompetition agreement "does not ripen until after the employment relationship ends." Opposition, pp. 14-15.  Actually, the Employment Agreement clearly defines the Restricted Period to include Plaintiffs' employment ("[d]uring the period commencing on the date hereof and continuing until the expiration of one (1) year from which the Employee's employment with the Company terminates[.]").  So, Plaintiffs' argument is based on a false premise.  But even if accepted as true, it is still a dispute between an individual and a company, and not an inter-company dispute.  Plaintiffs cite to Governo and Marion, two misappropriation cases, but conveniently fail to cite to Informix, 41 Mass. App. Ct. at 161-162, 668 N.E.2d 1351, 1352-53, despite the fact that the Massachusetts Court of Appeals squarely held that 93A had "no application to the postemployment breach of a noncompetition agreement arising out of an employer-employee relationship."

Simply put, Chapter 93A does not apply to this dispute because it arises strictly from Plaintiffs' respective employment with Boston Beer.  To that end, Plaintiffs' 93A claim must be dismissed.

**C.    Plaintiffs Stated Neither a Breach of Covenant of Good Faith and Fair Dealing Claim nor Unjust Enrichment, Because They Are Conflating These Common Law Claims with Their Allegation that Boston Beer Violated the MNAA**

Plaintiffs conflate their Employment Agreements with the MNAA.  Specifically, they assert that they did not receive adequate compensation because Boston Beer failed to pay them

4912-5806-8124.8

garden leave. Therefore, they contend that Boston Beer breached the covenant of good faith and fair dealing and was also unjustly enriched. But the Employment Agreements did not require garden leave – it required a payment of $3,000 – and it is undisputed that Boston Beer made those payments. The case law upon which Plaintiffs rely is clearly distinguishable. In <u>Green v. D2L Ltd.</u>, 516 F. Supp. 3d 43, 47 (D. Mass. 2021), the plaintiff asserted that she was owed commissions "as set forth in the contractual agreement between her and D2L." In that case, the Court held that the defendant-employer may have breached the implied covenant of good faith and fair dealing **in their contract with** the plaintiff, where the allegations were that her employer withheld her commissions, removed her from an account and therefore denied her the opportunity to earn further commissions. Here, there is no allegation that Boston Beer withheld any monies owed **under the Employment Agreements**, nor is there any allegation that Plaintiffs were denied any opportunities set forth in their respective agreements. And, Plaintiffs make no attempt to identify a case whereby a defendant was unjustly enriched when the defendant provided the very consideration that was set forth in the parties' contract.

Plaintiffs clearly believe that in accordance with the MNAA, their Employment Agreements should have set forth garden leave payments, instead of a lumpsum payment of $3,000. Even if they are correct (which they are not), such a statutory requirement does not create common law causes of action of breach of the covenant of good faith and fair dealing or unjust enrichment. See <u>e.g.</u>, <u>Fabriclear, LLC v. Harvest Direct, LLC</u>, 481 F. Supp. 3d 27, 35-36 (D. Mass. 2020) (noting that the covenant of good faith and fair dealing "does not exist outside a contractual relationship" and "may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship[.]"); <u>Pearson v. Bank of N.Y. Mellon</u>, 2014 U.S. Dist. LEXIS 106457, at *11-13 (D. Mass. Aug. 4, 2014) (dismissing breach of covenant of good faith

-8-

and fair dealing claim where the plaintiff had failed to allege any conduct by the defendants that plausibly suggested that they failed to perform under the terms of any agreement); O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 466 (D. Mass. 2018) (unjust enrichment serves as an equitable stopgap for occasional inadequacies in contractual remedies at law).

For these reasons, their common law claims fail to state claims upon which relief may be granted.

## III.      CONCLUSION

For the reasons set forth in Defendant's Motion and herein, Boston Beer respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

/s/ Jessica S. Jewell
Jessica S. Jewell (BBO# 679489)
Matthew T. McLaughlin (BBO #660878)
Nixon Peabody LLP
53 State Street
Boston, MA 02109
Ph. (401) 454-1046
Fax: (855) 858-8804
Email: jsjewell@nixonpeabody.com
mmclaughlin@nixonpeabody.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed and served a copy of the within document via the Court's Electronic Filing System to all counsel of record registered and able to receive Electronic Filings in this case on this 20th day of April 2026.

/s/ Jessica S. Jewell

4912-5806-8124.8