# EXHIBIT A

# THE BOSTON BEER COMPANY, INC.

## EMPLOYMENT AGREEMENT

AGREEMENT entered into by and between THE BOSTON BEER COMPANY, INC., a Massachusetts corporation with its principal place of business at One Design Center Place, Suite 850, Boston, MA 02210 for itself and on behalf of all of its subsidiaries and affiliates, including but not limited to BOSTON BEER CORPORATION, BBC BRANDS, LLC, and SAMUEL ADAMS BREWERY COMPANY, LTD., (collectively, the "Company"), on the one hand, and the undersigned employee of the Company (the "Employee"), on the other, effective as of the date Employee commences employment with the Company.

In consideration of the employment of the Employee by the Company, the Employee's eligibility to participate in the Company's Employee Equity Incentive Plan as set forth therein, the training provided to Employee, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Employee hereby agrees with the Company as follows:

1.    Duties.  The Company hereby agrees to employ the Employee and the Employee hereby accepts such employment in such positions and with such duties and responsibilities as the Company may from time to time determine.  For so long as he or she is employed by the Company, the Employee shall devote himself or herself to the affairs of the Company on a full business time basis and shall not engage in any other business activities, which, either singly or in the aggregate, materially interfere with his or her duties to the Company.  The Company reserves the right to modify the duties of the Employee from time to time, in its discretion.

2.    Compensation.  In consideration for the performance by the Employee of his or her duties hereunder, the Company shall pay to the Employee such compensation as the Company may from time to time determine, which the Employee agrees to accept

*3/1/04*

in full payment for his or her services. The Employee shall also be entitled to participate in such employee incentive programs as shall be adopted from time to time by the Company for its employees generally, subject to such eligibility requirements and other restrictions and limitations contained in such programs.

3.     <u>Proprietary Information</u>. The Employee hereby acknowledges that the techniques, recipes, formulas, programs, processes, designs and production, distribution, business and marketing plans, methods and manuals, training methods, pricing programs, customer contracts or other arrangements, materials and manuals used and to be used by the Company (collectively, "Proprietary Information"), including any such information developed by the Employee during the course of his or her employment with the Company, are of a confidential and secret character, of great value and proprietary to the Company. The Company shall give or continue to give the Employee access to the foregoing categories of Proprietary Information so long as the Employee continues to provide services to the Company and permit the Employee to work thereon and become familiar therewith to whatever extent the Company in its sole discretion determines. The Employee agrees that, without the prior written consent of the Company, he or she shall not, during his or her employment with the Company or at any time thereafter, divulge to anyone or use to his or her benefit and to the benefit of any other person or entity, any Proprietary Information, unless such Proprietary Information shall be in the public domain in a reasonably integrated form through no fault of the Employee. The Employee further agrees (i) to take all reasonable precautions to protect from loss or disclosure all documents supplied to the Employee by the Company and all documents, notebooks, materials and other data relating to any work performed by the Employee or others relating to or containing the Proprietary Information, (ii) not to make any copies of any of these documents, notebooks, materials and data, without the prior written permission of the Company, and (iii) upon termination for whatever reason of the Employee's

*Revised 02/04*

employment with the Company, to deliver these documents, notebooks, materials and data forthwith to the Company, and to delete any copies of electronic information that may be remain in Employee's possession after the provision of copies thereof to the Company.

4.    Covenant Not-to-Compete.  During the period commencing on the date hereof and continuing until the expiration of one (1) year from the date on which the Employee last receives compensation in any form from the Company (the "Period"), the Employee shall not, without the prior written consent of the Company, which consent the Company may grant or withhold in its sole discretion, engage, directly or indirectly, for his or her own account or the account of others, as an employee, consultant, partner, officer, director or stockholder (other than a holder of less than five percent (5%) of the issued and outstanding stock or other equity securities of an issuer whose securities are publicly traded), or otherwise, in the importing, production, marketing, sale or distribution to distributors of any malt beverage, hard cider or other product produced by the Company at any time during the Employee's tenure with the Company (a) which is either produced outside of the United States and imported into the United States or produced within the United States and (b) which has a wholesale price within twenty-five percent (25%) of the wholesale price of any of the Company's products, including but not limited to products marketed under the trade names SAMUEL ADAMS®, SAM ADAMS®, TWISTED TEA®, HARDCORE®, OREGON ORIGINAL™ or such other trade names as the Company may use to market its products during the Employee's employment with the Company.  The Employee acknowledges that he or she has read and that he or she understands this provision, and that he or she has agreed to it knowingly and voluntarily, in order to obtain the benefits provided to him or her by the Company.

Page 3 of 6

*Revised 02/04*

5.    <u>Non-Solicitation of Employees</u>.  During the Period, the Employee agrees that he or she will not, directly or indirectly, solicit, induce, persuade or hire, or attempt to solicit, induce, persuade or hire, or assist any third party in the solicitation, inducement, persuasion or hiring of, any employee of the Company who worked for the Company during Employee's tenure with the Company to leave the employ of the Company.

6.    <u>Remedy for Breach</u>.  The Employee expressly recognizes that any breach of this Agreement by him or her will to result in irreparable injury to the Company and agrees that, in addition to any other rights or remedies which the Company may have, the Company shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction either in law or in equity, to obtain damages for any breach of this Agreement; to enforce the specific performance of this Agreement by the Employee; and to enjoin the Employee from activities in violation of this Agreement.  In any such action, the Company shall be entitled to recover the costs and attorney's fees incurred by it in such action.

7.    <u>Training Expense</u>.  The Company will provide the Employee with training to assist the Employee in the performance of his or her duties as an employee of the Company, including the provision of training materials, training courses and supervision by experienced employees of the Company.  The Employee agrees, in the event of the Employee's voluntary separation of his or her employment with the Company and the acceptance of employment which breaches the terms of this Agreement, to pay the Company (unless otherwise agreed upon at time of training) $1,000 for each day of training and/or any orientation course provided or paid for by the Company to the Employee within the last five (5) years prior to the date of separation as a means of reimbursing the Company for such training.  Such payment shall be deducted from any monies owed to the Employee at the time of his or her termination, including wages,

Page 4 of 6

bonuses and/or commissions, and the balance, if any, shall be paid by the Employee promptly as may be required by law. Such reimbursement shall be in addition to any other remedy at law or in equity which the Company may have for Employee's breach of this Agreement.

8.     Entire Agreement; Modification. This instrument contains the entire Agreement between the Company and the Employee with respect to the subject matter contained herein and may be altered, amended or superseded only by an agreement in writing, signed by both parties. No action or course of conduct shall constitute a waiver of any of the terms and conditions of this Agreement, unless such waiver is specified in writing, and then only to the extent so specified. A waiver of any of the terms and conditions of this Agreement on one occasion shall not constitute a waiver of the other terms and conditions of this Agreement or of such terms and conditions on any other occasion.

9.     Severability. The Employee and the Company hereby expressly agree that the provisions of this Agreement are severable and, in the event that any court of competent jurisdiction shall determine that any provision or covenant herein contained is invalid, in whole or in part, the remaining provisions shall remain in full force and effect and any such provision or covenant shall nevertheless be enforceable as to the balance thereof.

10.    At-Will Status; Binding Effect; Benefit. The Employee is at all times an "at-will" employee of the Company, and nothing herein shall be construed to vary the "at-will" status of the Employee's employment. Paragraphs 3 through 10 and Paragraph 12 of this Agreement shall survive its termination and the termination of the Employee's employment by the Company. This Agreement shall be binding upon the Employee, without regard to the duration of his or her employment by the Company, any changes in the terms and conditions of the Employee's employment by the Company, or the reasons

*Revised 02/04*

for the cessation of such employment, and upon his or her administrators, executors, heirs, and assigns, and shall inure to the benefit of the Company and its affiliates and subsidiaries, and its and their successors and assigns.

11.    Counterparts.  This Agreement may be executed in multiple counterparts, each of which shall be considered and have the force and effect of an original.

12.    Governing Law.  The validity, interpretation and performance of this Agreement shall be governed by and construed in accordance with the laws of The Commonwealth of Massachusetts.  Any dispute between Employee and the Company shall be litigated exclusively in the state or federal courts of The Commonwealth of Massachusetts, to whose jurisdiction Employee hereby agrees to submit.  This Agreement shall be considered a sealed instrument under Massachusetts law.

IN WITNESS WHEREOF, the Company has caused this Agreement to be duly executed on its behalf and the undersigned have hereunto set their hands and seals in Boston, Massachusetts, all as of the date set forth below.

THE BOSTON BEER COMPANY, INC.

By: _____
*Authorized Signatory*

_____
*Date*

_____
*Signature of Employee*

_____
Judd Hausner
*Print Name of Employee*

12/30/06
*Date*

Page 6 of 6

*Revised 02/04*